Filed 6/15/26  P. v. Johnson CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JONATHAN CHARLES JOHNSON,<br><br>    Defendant and Appellant. | B344772<br><br>(Los Angeles County<br>Super. Ct. No. VA151513) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Joseph R. Porras, Judge.  Affirmed.

George L. Schraer, under the appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney, Jonathan Kline and Megan Moine, Deputy Attorneys General, for Plaintiff and Respondent.

Following a jury trial, defendant and appellant Jonathan Charles Johnson was found guilty of two counts of first degree murder (Pen. Code, § 187, subd. (a))[1] and a multiple-murder special circumstance allegation (§ 190.2, subd. (a)(3)) was found true on both charges. Defendant was acquitted of attempted murder (§§ 664, 187, subd. (a)) and shooting from a motor vehicle (§ 26100, subd. (d)). Allegations that he personally used and discharged a firearm (§ 12022.53, subds. (b)–(d)) were found not true.[2] Defendant was sentenced to life in prison without the possibility of parole.

Defendant contends the judgment must be reversed because the jury instructions did not require the jury to find he had the intent to kill in order to convict him as an aider and abettor of first degree murder. We disagree with defendant's interpretation of the instructions, conclude the jury was required to find defendant harbored the intent to kill, and affirm the judgment.

---

[1] Further statutory references are to the Penal Code.

[2] The parties agree defendant was convicted as an aider and abettor of the murders. Their conclusion is supported by the jury's findings that defendant was not guilty of shooting from a motor vehicle and the allegations that he personally used and discharged a firearm were not true.

2

## FACTS[3]

### I. *The Shooting*

Marilyn Cuevas and her boyfriend Alfredo Carrera lived with Carrera's mother on 68th Street in Los Angeles. On August 14, 2019, Cuevas was eight months pregnant with Carrera's baby. A baby shower was planned for the upcoming weekend. That evening, after having dinner with their mothers, Cuevas and her mother got into Carrera's car to take her mother home. The car was parked in the driveway of Carrera's residence.

Jose Flores, Carrera's best friend, was at the house to drop off baby gifts as he was unable to attend the upcoming baby shower. He and Carrera engaged in conversation while standing next to Flores's car. Cuevas waited in the driveway as Flores's vehicle was blocking her exit route.

A dark blue vehicle slowly approached and stopped. Gunshots were fired from the car. Flores was hit in the stomach and, as Cuevas was running toward Carrera, he was shot in the leg. Cuevas estimated three shots were fired toward Flores and one toward Carrera. The vehicle drove off. Flores died at the scene and Carrera ultimately passed away at a hospital.

---

[3] Because the issue raised on appeal turns on an interpretation of the jury instructions, the summary of facts is limited.

At the same time Flores and Carrera were shot, Joel Rosas was a few doors down from the incident, in front of his home, buckling his nine-month-old daughter into his truck. He heard what sounded like fireworks then saw an old blue or black car coming toward him. Rosas observed someone holding a gun and pointing it out of the window on the passenger side of the vehicle. He closed his door and threw himself on top of his daughter. Rosas was shot in the back, just above his buttocks, and was treated at a hospital. The bullet remained lodged in his body when he testified in January 2025.

## II. *The Investigation*

### A. Video Surveillance and Defendant's Arrest

Video surveillance showed the suspects' vehicle pull up to the scene. The vehicle was missing the rear bumper and the driver's side rear hubcap. It had a discolored front left fender and an open sunroof. An African-American male was driving the vehicle which contained two passengers—one in the front seat and the other in the back seat. The police utilized license plate readers to look for a car that matched the suspects' vehicle and were able to secure a license plate number. Two days after the shooting, defendant was arrested while seated in a parked vehicle that fit the description of the vehicle. An expended bullet casing was located on the window cowl (i.e., where the top of the

hood meets the area of the windshield wipers) and on the crease in the middle of the back seat.

## B. Jail Cell Statements

A police agent posing as an East Coast Crips gang member was placed in the jail cell with defendant.[4]  Defendant told the agent that he was a member of the First Street East Coast gang and had the moniker "Baby TC."  He said he was facing two "hot one[s]" and that, three days ago, he got caught in a car used in a killing.  Defendant explained two "Flowers" (a derogatory reference to the rival Florencia 13 gang) were killed because the Florencia 13 gang was responsible for the murder of "[his] boy" known as "X-Ray."[5]  He said he was in the car with "Infant China" and "Infant Meech."  Infant Meech was "busting" (shooting), and a shell casing was left in the car.  Defendant admitted that all three men in the vehicle "bust" (shot).

Defendant was looking for a red Thunderbird because that was the vehicle involved in X-Ray's killing.  Defendant told the agent that, when they observed the victims, defendant

---

[4]     This method of investigation is used to elicit statements from a suspect that are either incriminating or exonerating and is commonly referred to as a "*Perkins* operation," arising from the decision in *Illinois v. Perkins* (1990) 496 U.S. 292.

[5]     Carrera's home was in an area claimed by the Florencia 13 gang.  On August 14, 2019, at 1:00 a.m., X-Ray—an East Coast gang member— was killed by one or more members of Florencia 13.

commented "'let's just kill these'—and then it starts." Defendant used a .40-caliber gun with a magazine that held 50 bullets. The three occupants of the vehicle carried a total of nearly 100 rounds of ammunition.

## DISCUSSION

### I. *Standard of Review*

The legal adequacy of a jury instruction is subject to de novo review. (*People v. Cole* (2004) 33 Cal.4th 1158, 1211.) In conducting such a review, "'we evaluate the instructions as a whole, not in isolation.'" (*People v. Nelson* (2016) 1 Cal.5th 513, 544, quoting *People v. Rundle* (2008) 43 Cal.4th 76, 149; *People v. Howard* (2024) 104 Cal.App.5th 625, 662 [instructions are reviewed collectively to determine if the jury was properly advised on the element of malice aforethought].)

### II. *Intent to Kill Instructions*

"First degree murder . . . is the unlawful killing of a human being with malice aforethought, but has the additional elements of willfulness, premeditation, and deliberation which trigger a heightened penalty." (*People v. Chiu* (2014) 59 Cal.4th 155, 166.) When first degree murder is based on premeditation and deliberation, the People are required to prove the defendant had express malice which consists of a specific intent to kill. (*People v. Rushing* (2025) 109 Cal.App.5th 1025, 1032.) "An aider and abettor who knowingly and intentionally assists a confederate to

6

kill someone could be found to have acted willfully, deliberately, and with premeditation, having formed his own culpable intent. Such an aider and abettor, then, acts with the mens rea required for first degree murder." (*People v. Chiu, supra*, 59 Cal.4th at p. 167.)

The parties agree that, to convict defendant of aiding and abetting first degree murder, the jury was required to find he harbored an intent to kill. (§ 189, subd. (e)(2); *In re Lopez* (2023) 14 Cal.5th 562, 585 ["'[w]hen the offense charged is a specific intent crime, the accomplice must 'share the specific intent of the perpetrator '" to be guilty of the crime]; *People v. Gentile* (2020) 10 Cal.5th 830, 848 ["direct aider and abettor to murder must possess malice aforethought"].) What they disagree on is whether the instructions covered this requisite mens rea. We turn to the relevant instructions.

The jury was instructed, pursuant to CALCRIM No. 400, as follows: "A person may be guilty of a crime in two ways. One, he may have directly committed the crime. I will call that person the perpetrator. Two, he may have aided and abetted a person, who directly committed the crime. A person is guilty of a crime whether he committed it personally or aided and abetted the perpetrator." The next instruction, CALCRIM No. 401, read in pertinent part:

To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that:

1. The perpetrator committed the crime;

2. The defendant knew that the perpetrator intended to commit the crime;

3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime;

AND

4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime.

Someone aids and abets a crime if he [or she] knows of the perpetrator's unlawful purpose and he [or she] specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime.

8

Defendant takes issue with CALCRIM No. 401, arguing that it "failed to inform the jury that [it] could not find [him] guilty of first degree murder unless [it] found that [he] harbored the specific intent to kill that is required for first degree murder." He maintains intent to kill was a necessary element to the charged offense and the absence of an instruction on it requires reversal of the judgment.[6] However, as we will explain, an evaluation of the instructions as a whole reveals the jury was instructed that defendant must have intended to kill Carrera and Flores for him to be guilty of first degree murder.

In addition to CALCRIM Nos. 400 and 401, the trial court instructed the jury with CALCRIM No. 520, which explained that first degree murder requires proof that defendant committed an act that caused the death of another person and that he acted with malice aforethought. The instruction indicated "defendant had express malice if he unlawfully *intended to kill*." (Italics added.)

The trial court also gave CALCRIM No. 521 which informed the jury that defendant is guilty of first degree

---

[6] Although defendant did not object to the aiding and abetting instructions, we decline to find his argument is forfeited because "no objection is required to preserve a claim for appellate review that the jury instructions omitted an essential element of the charge." (*People v. Mil* (2012) 53 Cal.4th 400, 409.)

murder "if the People have proved that he acted *willfully*, deliberately, and with premeditation. *The defendant acted willfully if he intended to kill.* The defendant acted deliberately if he carefully weighed the considerations for and against his choice and, knowing the consequences, *decided to kill.* The defendant acted with premeditation if he *decided to kill* before committing the act that caused death." (Italics added.) Reading CALCRIM Nos. 400, 401, 520, 521, together (as we must) the jury could only find defendant guilty of first degree murder, if it concluded he acted willfully and with intent to kill.[7]

Defendant argues, when CALCRIM Nos. 520 and 521 are considered collectively, "it is clear that CALCRIM No. 521 applies to the actual perpetrator, not the aider and abettor." But this argument does not hold water because CALCRIM Nos. 520 and 521 specifically referred to "the defendant" and defendant Johnson was the only person on trial. (*People v. Estrada* (2022) 77 Cal.App.5th 941, 947–948 [rejecting argument that CALCRIM Nos. 520 and 521 apply to an uncharged shooter rather than the charged aider and abettor and concluding that they, when read

---

[7] The jury was instructed to "pay careful attention to all of [the] instructions and consider them together." We presume the jury followed this instruction. (*People v. Howard* (2024) 104 Cal.App.5th 625, 662.)

10

together with aiding and abetting instructions, required proof of intent to kill to find the aider and abettor guilty of first degree murder]; see also *People v. Rushing, supra,* 109 Cal.App.5th at pp. 1031–1033.)  Defendant has not rebutted the presumption that the jury followed the instructions and understood "the defendant" to be the person on trial rather than an uncharged shooter.  (*People v. Barrett* (2025) 17 Cal.5th 897, 1042 [jury presumed to understand and follow the court's instructions].)

## III.  *Prejudice*

If we were to assume the trial court erred in failing to instruct on the mens rea required for defendant to be convicted of first degree murder, that error requires reversal only if it was not "harmless beyond a reasonable doubt."  (*People v. Barrett, supra,* 17 Cal.5th at p. 988.)  An "instructional error is harmless when the jury necessarily decides the factual questions posed by the erroneously omitted language adversely to the defendant under other properly given instructions.  [Citation.]" (*Ibid.*)  In other words, the ""[t]he absence of an essential element in one instruction may be supplied by another . . . ."'  [Citation.]" (*People v. Delgado* (2017) 2 Cal.5th 544, 574.)

In the information, the People alleged defendant committed multiple murders—a special circumstance set

11

forth in section 190.2, subdivision (a)(3). The jury was instructed, pursuant to CALCRIM No. 702, that "[i]n order to prove this special circumstance for a defendant who is not the actual killer but who is guilty of first degree murder as an aider and abettor, the People must prove that the defendant *acted with the intent to kill*." (Italics added.) Because the jury found the special circumstance true as to both murders, and the parties agree defendant's participation in the crimes was as an aider and abettor, the jury necessarily found the evidence supported a finding that defendant intended to kill Carrera and Flores. (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1165 [by finding the multiple-murder special circumstance true, the jury "necessarily [found] that each appellant had the specific intent to kill"].) We can safely say, beyond a reasonable doubt, that the verdict would have been the same even if the trial court's instructions are interpreted in such a way as to exclude the requirement of intent to kill for first degree murder.

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

                                                     KUMAR, J.[*]

We concur:


HOFFSTADT, P. J.


KIM (D.), J.

---

[*]     Retired Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13